McGEE et al. v. RECONSTRUCTION FINANCE CORP. et al.

No. 13682.

United States Court of Appeals
Fifth Circuit.

March 22, 1952.

Rehearing Denied June 18, 1952.

5. Rules 38 and 39, Federal Rules of Civil Procedure.

Mark McGee, Fort Worth, Tex., J. E. McLemore, Jr., Dallas, Tex., Charles P. Atkinson, Austin, Tex., J. M. Donald, Bowie, Tex., for appellants.

Robert S. Strauss, Frank G. Newman, Irving L. Goldberg, Ben H. Fly (RFC Loan Agency), Dallas, Tex., for appellees.

Before BORAH, RUSSELL, and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

The trial had in the Court below was initiated by the filing of a complaint by Reconstruction Finance Corporation, for and on behalf of itself and Mercantile National Bank of Dallas, seeking to foreclose liens against certain equipment and securities alleged to have been pledged as collateral to secure a loan in the original amount of $230,000. The loan was evidenced by a note dated March 26, 1946, payable to Mercantile National Bank and signed by C. M. Pearce, individually and as President of Apex Drilling Company, Inc. The note was alleged to have been transferred and assigned to Reconstruction Finance Corporation, together with all liens securing the payment thereof, with reservation that under a participation agreement existing between the payee and Reconstruction Finance Corporation the former held an equitable interest of 25% in the note and col-

lateral and in any and all proceeds received therefrom.

In addition to other described collateral expressly pledged to secure the payment of the note, the complaint alleged that certain "separate collateral" agreements and the collateral covered by them were subject to foreclosure to satisfy the unpaid balance of the note, and named as defendants the parties who claimed an interest in the collateral covered by the agreements.

The complaint was answered by Apex Drilling Company, Inc., and C. M. Pearce, who, among other defenses pleaded the defense of accord and satisfaction based upon the contention that an oral agreement entered into between Reconstruction Finance Corporation and these two defendants in 1947 operated to discharge the indebtedness sought to be enforced. These defendants did not request a trial by a jury. R. H. Rucker, in a separate answer, which made no reference to Pearce's claim of accord and satisfaction, claimed title to 20 shares of Union Bank and Trust Company stock and a cashier's check for $9,473.08 by virtue of an assignment to him by C. M. Pearce on September 10, 1949. His claim was predicated upon the contention that the collateral in question was not properly assigned and not subject to the note of the complainants. He prayed that the issues be tried to a jury. A demand for a jury trial was also transmitted to the clerk by a letter. Kate H. Pearce and Charles P. Atkinson answered admitting that their stock was pledged to the Bank under collateral agreements to secure the personal indebtedness of C. M. Pearce, but denying that it was subject to the liability upon which foreclosure was sought. Mark McGee answered and claimed title to 20 shares of Union Bank & Trust Company stock by virtue of an assignment to him by C. M. Pearce on November 1, 1947. Jean E. Collins, a married woman, was dismissed by stipulation of counsel.

Trial was had by the Court without a jury. At the commencement of the trial the Mercantile National Bank was allowed to intervene as a party plaintiff and to adopt the pleadings of Reconstruction Finance Corporation. At the close of the evidence the trial Court found the facts as announced in an oral opinion and entered judgment for the complainants that the securities originally pledged to the Bank as collateral were subject to their claim. C. M. Pearce and Apex Drilling Company, Inc. have not appealed. The remaining defendants have prosecuted this appeal from the judgment as it affects their respective claims to the securities.

The provisions of the "separate collateral agreements" here involved furnished the foundation for appellees' claim of lien. One of these, dated May 21, 1945, was executed by Kate H. Pearce and pledged 25 shares of the capital stock of Travelers Insurance Company to secure the payment of all indebtedness "now owing" to the Bank "or which may hereafter become owing to it" by Kate H. Pearce and C. M. Pearce. The other separate collateral agreement, dated June 7, 1945, was executed by C. M. Pearce, Jean E. Collins and Charles P. Atkinson and, as it existed at the time of suit, pledged 20 shares of the capital stock of Travelers Insurance Company, 20 shares of Union Bank & Trust Company stock and the cashier's check referred to above, for the purpose of securing the Bank in the payment of all indebtedness then owing to it or which might thereafter become owing to it by these signatories or either of them. Each collateral agreement provided that the property pledged "may be held by said Bank as security for any and all debts and obligations * * * to said Bank for the payment of money, whether such debts, liabilities and obligations now exist, or are hereafter incurred or arise, and whether the obligation or liability * * * be direct, contingent, primary, secondary, joint, several, joint and several, or otherwise, and whether such obligations be of the same character or different," and all rights and powers thereunder, "together with all securities then held in pledge hereunder, may be transferred and assigned by said Bank at such times and upon such terms as it may deem advisable; and such assignee shall succeed to all rights and powers of said Bank hereunder."

It appears from the evidence that C. M. Pearce secured several loans from Mercantile National Bank during the period

from May 2, 1945 to June 8, 1948. On September 15, 1945, he borrowed $200,000 from the Bank on a note signed by C. M. Pearce, d/b/a Apex Drilling Company. On or about March 26, 1946, Apex Drilling Company was incorporated and on that date the corporation, and C. M. Pearce individually, secured a loan from the Bank in the amount of $230,000, the proceeds of which were used to satisfy the $200,000 note and other debts of Pearce, d/b/a Apex Drilling Company. The payment of this note was specifically secured by a chattel mortgage covering the assets of the new corporation and by an assignment of all of the stock of that corporation.[1] On February 5, 1947, the $230,000 note, together with the chattel mortgage, was assigned by the Bank to Reconstruction Finance Corporation without recourse. On February 13, 1947, Reconstruction Finance Corporation issued a "certificate of interest" certifying that the Bank retained an interest of 25% of the loan. The transactions between Reconstruction Finance Corporation and the Bank were effected in accordance with "a participation agreement", dated April 14, 1945, which contained provisions as to sharing of collateral.[2]

At all times, from the date of their execution until the time of trial, the Bank continued to hold the collateral agreements and the securities pledged thereunder and at no time were these instruments transferred or assigned to Reconstruction Finance Corporation by express agreement. Although the indebtedness of C. M. Pearce to the Bank, other than the $230,000 loan, was twice reduced to $1.00, Pearce never made demand upon the Bank for return of the securities. On November 1, 1947, C. M. Pearce executed an assignment of the 20 shares of Union Bank and Trust Company to Mark McGee and on September 10, 1949, he executed an assignment of that stock and the cashier's check to R. H. Rucker. Both purported assignments were for antecedent debts and contained a statement to the effect that the property assigned was being held by the Mercantile National Bank as collateral for a $1 loan. Demand was not made upon the Bank for delivery of this property until 1950.

■ With reference to his plea of accord and satisfaction, or agreement of settlement, C. M. Pearce testified in substance that following the filing of a suit in 1947 by Reconstruction Finance Corporation seeking to foreclose the chattel mortgage above referred to he, a Mr. Sullivan, and Reconstruction Finance Corporation entered into an oral agreement under which he was to turn the property covered by the chattel mortgage over to Mr. Sullivan and the suit was to be dismissed, which agreement was carried out, and it was his "understanding" that Sullivan was going to "liquidate my indebtedness." He further testified that he "was assured by Mr. Sullivan that he would take care of the Reconstruction Finance Corporation." Without further recital, but considering the evidence as a whole, it is clear that the parties only entered into an agreement whereby Sullivan was to take charge of the equipment and utilize it to advantage toward the end that from the profits realized from its use the loan to Apex Drilling Company, Inc. would be satisfied. This agreement was reduced to writing in the form of a proposal to Reconstruction Finance Corporation from Apex Drilling Company and

1. This note defined indebtedness as: "The term 'the Indebtedness' as used herein shall mean the indebtedness evidenced by this Note and any and all other indebtedness of the undersigned as Payee, * * * The term 'the Collateral' as used in this Note shall mean any funds, guarantees, or other property or rights therein of any nature whatsoever or the proceeds thereof which may have been, are, or hereafter may be, hypothecated directly or indirectly, by the undersigned or others, in connection with, or as security for, the Indebtedness or any part thereof. The Collateral, and each part thereof, shall secure the Indebtedness, and each part thereof."

2. "12. Sharing of Collateral. Any and all security or guaranty of any nature, including but not limited to rights of setoff and counterclaim, which Bank or RFC may at any time receive or have, jointly or severally, to secure Bank or RFC with respect to any such loan shall secure the interests of Bank and RFC therein in the same proportion as such interests bear respectively to the entire unpaid balance of the loan."

Zenith Drilling Company (under which name Sullivan operated) in which it was requested that the foreclosure action be dismissed. The evidence shows no action by which Reconstruction Finance Corporation released Pearce or the Company from liability on the note. Certain items of property were sold but always with the written consent or approval of Pearce. The finding of the Court that all of the sales "were consented to, and participated in, by the defendant, C. M. Pearce, and that Pearce knew what he was doing when he did that, and represented to the Reconstruction Finance Corporation that the sales were good sales", is fully supported by the evidence.

■ The primary and substantial question presented by this appeal is whether the terms of the collateral agreements, as above described, and the subsequent transactions between the parties, subjected the collateral pledged thereby to foreclosure for payment of the unpaid balance due on the $230,000 note. It is not suggested that there is any illegality in the provisions of the collateral agreement which include unspecified future obligations of C. M. Pearce. The claim is that the collateral securities were not subject to the indebtedness because they should be construed to secure only the indebtedness of C. M. Pearce individually, and that even this was not accomplished in the present case because there was never any express assignment made by the Bank to Reconstruction Finance Corporation, nor did it ever have possession of the securities or claim to have a lien thereon until the filing of the second amended complaint in this case. It is further vigorously asserted by the appellants that the pledgors were in no wise bound by the terms of the "participation agreement" quoted above. It is not contended, however, that C. M. Pearce is not liable for payment of the note in question. It evidenced at least a secondary liability upon his part to the Bank within the provisions of the collateral agreement. These we have already set forth in full and from them it is clear that as between Pearce and the Bank the collateral represented security for the obligation. The assignment of this note by the Bank to Reconstruction Finance Corporation with a retention of 25% interest therein did not operate to release the collateral, since the agreements specifically provided that the instrument, rights and powers granted thereunder and securities pledged, could be transferred and assigned at such time and upon such terms as the Bank might deem advisable. When such obligation was transferred and assigned, the assignee became also entitled to the claim of lien possessed by the Bank. None of the asserted agreements between the other pledgors and Pearce are even claimed to have been brought to the attention of the Bank prior to the time the loan in question was made. The rights of the parties must be determined by the terms of the collateral agreement and the instruments which Pearce executed. The facts of the case support the finding of the trial Judge that the collateral in question was subject to the obligation of the note and that Pearce and the Bank had so considered and treated it. Under these circumstances it is not legally material that Reconstruction Finance Corporation, for a time, was ignorant that the Bank held such collateral, and that it stated to Rucker and McGee that it did not so have it. Neither of the parties acted upon such statement, or were in any way prejudiced thereby. The right to this security arose by operation of law and the facts of the case under the terms of the collateral agreements, and upon the discovery of their existence this right could be enforced in this proceeding by the joint owners of the obligation which the collateral secured. The Court did not err in adjudging this claim superior to those of the appellants who held assignments expressly subject to the claim of the Bank, and in further adjudging that this claim was effective upon the security pledged by Mrs. Pearce and Atkinson.

■■ The record contains no order of the Court denying the defendant Rucker's request for a jury trial. The only reference is to a letter to his counsel apparently stating that the request had been refused by the Court. Even this letter is not before us. Furthermore, the Clerk notes in the record that the "letter was from Recon-

struction Finance Corporation, plaintiff, hence not in the files of this office." We, therefore, can not be certain whether the Court took any formal action upon the request, nor of the circumstances or reasons which induced such an order, if entered. Appellant Rucker, therefore, fails to present for our review any order of the Court denying the demand for a jury trial. However, we need not place our judgment upon this ground, or direct the record to be supplemented, since we conclude: that in the nature of the controversy (a proceeding essentially to marshal, establish, and enforce liens); the restricted issues presented by defendant Rucker's answer; that his rights could rise no higher than those established through Pearce (who did not demand a jury and as to whom the judgment has become final); that this assignment of error should not be sustained.

We have considered the other assignments of error urged by the appellants, but find them without merit.

Judgment affirmed.